The Honorable Judges of the United States Court of Appeals for the Third Circuit. Oyez, oyez, all persons having business with the Honorable United States Court of Appeals for the Third Circuit are admonished to draw near and give their attention, for this court is now in session. God save the United States and the Honorable Court. Please be seated. Thank you. Good morning, everyone. This morning, my colleagues and I, Judge Chung, who's with me in the courtroom, and Judge McKee is with us remotely, are prepared to hear argument in two cases. And the first case we'll hear is Capps and Joyce. Capps is appellate number 22-1261, and the Joyce case is appellate number 22-1262, and those cases are against Joseph Dixon etal. So we'll hear from the appellate. May it please the Court. My name is Michael Barker. I represent the defendants in this case, Brian Orndorff, Jody Farabella, and the City of Millville, and I respectfully request two minutes for rebuttal. I'll be granted. Should I proceed? You may. The underlying issue in this case is whether a chief of police can be subjected to individual capacity liability based on alleged Fourth Amendment excessive use of force by a subordinate when there are no factual allegations asserted against the chief that he affirmatively and directly caused the harm alleged by the plaintiff. When you say no allegations that he caused the harm, the allegations are there that he basically enacted or promoted a policy which caused the harm. So there's a causal allegation there. I think you're arguing that there's no allegation of direct participation in the Fourth Amendment violation. That's a very different argument. That is my point, Your Honor, that the allegations that are made in the Second Amendment complaints are about the conduct of former Chief Farabella in his administrative role and that he failed to do more training or supervision or better training or supervision. These are not the types of conduct that would be applicable for finding that Chief Farabella has personal liability. So it's that distinction that I wish to make very clear at the outset of my remarks. We're not here to say that former Chief Farabella doesn't answer for his administrative functions or his official conduct. And the district court drew that distinction between what's official conduct and what's personal. And we're aware that this is an individual liability cause of action. And we're right with you on that. But my question for you goes to this concept of affirmative conduct. We have case law that speaks of the following scenario. An individual superior is aware of a pattern of conduct by a subordinate, takes no action or takes ineffective action, and from that it can be inferred that that would be implicit approval of the conduct. Why isn't the complaint sufficient to allege that? Well, as a matter of law, I think it raises a question of qualified immunity. Isn't that what we're here on, though? Isn't this the case in this appeal, qualified immunity appeal? Yes. Yes. And that which is this circuit's case in describing Rizzo and the progeny that surrounded it prior to March of 1983 said that there is no affirmative duty to train, supervise, and discipline subordinates. Accordingly, we hold that as taking that as true, Chinchillas, in this case, Katz or Joyce, allegations concerning the... Carlson was the director of the... But in this case, it's Chief Arabella. His failure to train, supervise, or discipline that conduct did not violate a clearly established constitutional duty. What was the constitutional amendment at issue in Chinchilla? Was it a Fourth Amendment case? And I ask that question because we've certainly been instructed that the underlying constitutional violation and the state of mind that goes with it matters to determine whether the supervisor is responsible. So should that matter? Well, in Chinchilla, the accused opened an envelope that was marked or allegedly marked so that he shouldn't have opened it because it was privileged because it went to a lawyer. So that was a First Amendment claim. We're in a Fourth Amendment violation here. Yes. Whether the conduct was objectively reasonable by Dixon. And so it doesn't matter. I don't know how much Chinchilla helps us as a First Amendment case. Well, Chinchilla is only, I think, important because it talks about Rizzo and Rizzo to Iqbal. Rizzo's in 1976 talking about personal liability. And the next time the Supreme Court talks about it is in 2009 in Iqbal. But Iqbal says that... Pardon? Go ahead. Oh, I was going to say... ...talked about Iqbal. And I'm not sure why we need to rely upon a Fourth Amendment case. We have our own case. We have Barks. We have Stone Cane, which I know the factual scenario there is different. We have Sample v. Deitch. We have our own cases that seem more pertinent here than a Fourth Amendment case. Well, I personally find that what Judge Simandl said is most helpful to me in understanding this question. We cited Judge Simandl in an unpublished opinion called Hicks v. Camden County. And I know it's unpublished. But the way he phrased the issues and resolved it, I think, was well written and persuasive for the court. Judge Simandl directly addressed the type of argument made by Caps and Joyce in this case. And the allegation was that the supervisor failed to track excessive force complaints. Just like in this case, that's one of the allegations. And Judge Simandl said, for the following reasons, that's clearly not enough. He said, it's elementary that a defendant in a civil rights action must have personal involvement in the alleged wrongdoing. He cited DeGroat v. DeFebo, which is a middle district of Pennsylvania, which cited Ivanko v. Fisher. And he said, this remains true despite allegations of a pattern of constitutional violations. The supervising official must have played an affirmative part in the misconduct. And then he cites Chinchilla, which is our Third Circuit case we started talking about this morning, and an earlier Hicks decision. Can I explore that a little bit with you? It seems to me in both parties' briefings, the intent of a Fourth Amendment use of unreasonable force claim was conflated. There are two intents required. The intent to use physical force and the objective, not subjective, intent versus vis-a-vis the force. So there has to be an but there doesn't have to be a subjective intent to use excessive force. It's objectively reasonable. And it seems like those two have been conflated. So typically, or if you look in the words of Iqbal, Iqbal said, in the context of determining whether blah, blah, blah, we look to the So in terms of shared intent for an intentional use of force, that's typically reflected by agreement, conspiracy, like a conspiracy in aiding and abetting, a shared intent might be assisting, encouraging, soliciting. Can there not be inaction that might reflect a shared intent to use force? And when is that? Well, the cases that we've got tell us that the supervisor would have to be engaged in the conduct himself, direct others to be engaged in that conduct, or to have observed, to know, have contemporaneous knowledge and acquiesce to it. So he's there and he turns his back, gives it a You mean he has to be physically present at the arresting? Yes. So then from your point of view, then a supervisor could never be held individually liable if he knows the conduct of a rogue officer. Every time that officer hits the street, if he runs into a citizen, he's going to engage in excessive force and does nothing. You're saying that that officer, that supervisor would never be liable. Well, I can only address this case and I couldn't begin to But isn't that what this case is? You can answer the question. You don't, you can answer the question. You don't limit it to this case. Answer the question that's poised to you. I didn't hear everything. What Judge McKee says is the question that you've been asked should be answered. And I do think it is this case because the allegations viewed in a light most favorable to the plaintiff and accepted is true is that Farabella was aware that Dixon was an officer who repeatedly used excessive force and their allegations is he did nothing about it or he did the minimal amount in the verbal judo retraining. And so from your point of view, I ask again, is it your view that a supervisor, even if they don't physically on the scene, but knows that rogue officer every time he goes out meets a citizen is going to engage in excessive force, but does nothing, can never be held liable? Because that's what I understand the logical implication of your position to be. And if I'm mistaken, I would like to be corrected for sure. We only know what we can observe and the police officer who's the supervisor can only be held responsible because it's all about individual responsibility under 1983. So we can only hold him responsible for what he can see and what he can observe. And if he's not there and he can't see it. You're saying that if someone is aware of egregious conduct, I'm not saying that's what would be proven here, but you're saying if a supervisor is aware of egregious conduct on the persons that he supervises or she supervises, that supervisor cannot be liable unless they're physically on the scene. The fact that there may be a block away and aware of it or in their office and aware of it or aware of it because they constantly get reports of it. That's irrelevant. They have to be physically present. That makes no sense. Or otherwise able to observe it. And that's what I'm saying, that the relief for the plaintiff. You're saying knowledge is irrelevant unless it's direct knowledge. That if they know about it, they only know about it through their own senses. That's irrelevant. You got to help me understand that and put that in context with our decision in parks versus first correctional medical where we laid out four situations where there could be supervisory liability. And the fourth one was knowingly acquiesces to subordinates unconstitutional conduct. I think you'd agree that one can acquiesce to a subordinates unconstitutional conduct without physically being there to observe the conduct if you know about it. The standard for the individual personal responsibility for the chief of police would be that he does not have responsibility, personal responsibility, based on the scenario that you've submitted. The relief for the claimant would be under Monel and that would be because the knowledge is there of a repeated course of conduct. Totally different issue. Because you could have a supervisor who's not a policymaker. If you have a policymaker as a supervisor, then I agree with you, Monel controls. You could have a supervisor, and I would assume that most supervisors are not policymakers. You could have a supervisor who's not a policymaker, so Monel's not implicated, but yet the four scenarios we set forth in Barks would still apply unless you're saying that our 2014 decision in Barks is not relevant to you. I'm saying, Your Honor, that the knowledge of the supervisor is, in this case, our policymaker, Chief Farabella, would be measured under the Monel doctrine and that would inculcate the, tend to inculcate the municipality, but not the officer, not the chief of police. Oh, I'm sorry. No, I wanted to know if you had any more questions. Go right ahead. It seems to me, or I guess, to me where the real gray area that the parties are arguing about here is the acquiescence portion. Because we've said direct involvement, obviously you're part of the hands-on offender. That's an intentional use of force. If you're directing, you have this sort of shared intent for an intentional use of force. But the acquiescence, I think, is where the gray area is. So I'm trying to explore that with you because it seems to me if it's deliberate indifference and Iqbal says the intent has to be the same, that's a lower standard than intentional use of force. But acquiescence could be higher, but I'm trying to understand what actions would reflect a shared intentional use of force. For instance, let's make a closer example. If I am a supervisor and my officer says to me, you know what, I'm really sick of John Doe. We arrest this dude every week, always drunk, always causing a problem, judge always lets him out. Next time I'm going to teach that guy a lesson, I'm going to punch him in the face as soon as I see him. If you say yes, if I say yes, I mean I'm directing, I'm explicitly approving that. If I'm silent, is that a shared intent sufficient? Is that deliberate indifference? Where does that lie? If my silence is enough, is it because vis-a-vis my supervisory position or is it simply because all officers have a duty to prevent unconstitutional uses of force? Every defendant has a responsibility and in that scenario, that officer who acquiesced would have to answer. Okay, so silence when I'm affirmatively told there will definitely be an unconstitutional use of force. That is an adoption of that intent. Could be in your scenario. Right, in my scenario. What about if this is a different path now? We're talking about, Judge McKee was asking you about knowledge, actual knowledge, whether it be on scene or in the fact pattern we just discussed. Seems to me in Santiago and Parkell, we said that knowledge of past harms, past conduct, such as a pattern, has to be of actual constitutional violations. So is that the standard? Does the awareness have to be that Farabella actually knew? I guess what I'm trying to explore here is the complaint says that the 2016 complaints were all unfounded or exonerated. So under Parkell and Santiago, is that insufficient or is there other case law? Insufficient because it's got to be a pattern or practice of excessive use of force. And if the allegations are that there's no findings of excessive use of force by Dixon prior to this event, then you don't have a pattern or practice of excessive use of force. What you have in this case is a pattern or practice of Dixon filing a lot of use of force report forms. He uses force. It's not a finding that there's excessive use of force. And that transition from use of force to excessive use of force is made liberally in the arguments against us, but it's not the facts of the case and not alleged that way. I have one more question. Even if, let's assume that all of these were founded, that there was in fact, well, actually strike that. Let's assume these were unfounded and Farabella had no knowledge that they should be founded. You know, they're legitimately unfounded or exonerated. Is there, there seems to be a claim of failure to discipline, failure to appropriately remediate the conduct. It seems to me within the case law, there's this penumbra of feasibility. I think in, I don't know if I'm saying this, Chivarriaga and Argueta, we said that supervisors had to have been able to implement the changes. If, are there, are there contractual or other limitations on how the chief is allowed to, for instance, you know, you can't, is there a union contract that you can't fire someone unless the use of force is founded? Is there a union contract that you can't suspend someone if a use of force is exonerated or unfounded? Well, whenever there's a charge against an officer, they're entitled to due process and there has to be a finding. And until then, there's not a presumption that there's been excessive use of force. So did I answer your question? Well, I guess what power does the chief have in the, would the chief have power to fire or suspend an officer who had a pattern of unfounded or exonerated, many unfounded or exonerated use of force claims, complaints? Is that within the chief's power? I don't think so. Because of due process? Because it's not an excessive use of force yet. And until you find that the allegations of misfeasance are sustained, you can't take the disciplinary action. So if an individual supervisor had knowledge of a pattern of founded acts of excessive force and did nothing, would he be individually liable? No. Why? Because that falls under his administrative role. That's his official conduct and it's misfeasance. Even though he had personal knowledge, that he wasn't present, but he was aware of this behavior, you're saying he could, is there any scenario an individual supervisor could be liable ever? He's liable in his role as the administrator. He's liable for his official misconduct. But then your view is, you have your analysis that if we adopt your position, you have annihilated the concept of individual liability for a supervisor. It falls under his official conduct and the relief is found under Monell and that's how that works. I understand. Judge McKay, do you have any further questions? Well, just what happens, it goes back to my earlier questions, what happens if the supervisor is not a policymaker because most supervisors are not policymakers? Then there's absolutely no liability? A supervisor that's not a policymaker is still an officer, is still a defendant, and still has to be responsible for his own conduct. And if he's had observations and he takes an affirmative role in the challenged event by participating, by allowing, by acquiescing, he's going to be responsible. I think what Judge McKay might be driving at is, let's assume the defendant is a sergeant and that sergeant has knowledge of founded uses of excessive force. He's not a policymaker. Can he be held liable in his individual capacity? He's not present at the scene, doesn't lay hands on the guy, but knows his subordinate is going to go out on the street and that's his pattern. Can I just add to that question? Couldn't that reflect approval, adoption, authorization of the unconstitutional use of force? Just one second. Excuse me. That's a good idea. I'm sorry. Close question. I think it's official misconduct. I think he has an obligation to report what he knows and that his failure to do so would cause him to be charged and he would be responsible for answering the charges. But okay, taking that answer as it is, that means a policymaker is immune, quote unquote, from the same exact behavior simply because they are also, their duties also include policymaking. No, the supervisor, any supervisor, you line them all up and they all know that Joe Schmo is a rogue and he's a bad actor and everybody's got this silence about it and they all acquiesce and they all go along with it and they're all going to be charged and they're all going to be disciplined and it's all going to liability because that's exactly the kind of institutional deliberate indifference that we're trying to root out. But if you're the chief and you're the person to whom the supervisors are reporting, so in your example, you said, well, if he didn't report it, let's say the sergeant does report it, doesn't the chief have to do something as the last person, the buck stops here? I mean, wouldn't that reflect the chief's authorization? Yes, that's the whole idea of having internal affairs departments, which we have, and the whole reason why we have discipline that goes after an investigation that follows up on the charges so that there's a whole due process and then we can sustain the charges and terminate or the better practices into line with what's required to be a policeman, police person. All right, we'll hear you back on rebuttal. Thank you. Thank you. Okay. Good morning, your honors, and may it please the court. My name is Louis Charles Shapiro, and I represent the plaintiff's appellees, Audra Caps and Tanika Joyce. I have known Mr. Barker for almost 30 years, and I agree with him when he says in his supplemental brief that the court should just keep this simple, and we've agreed on a number of things over the years. What we don't agree on, respectfully, is that this court should remake 30-some years of supervisory liability jurisprudence for Chief Jody Farabella. Chief Jody Farabella, who has had the distinction of having two eventual convicted felons on his police department, on his watch. Let's focus, though, on whether or not the law was clearly established such that Mr. Farabella should have known that by not taking any action, he was violating Caps and Joyce's constitutional rights. And I ask this because Iqbal has rejected the theory that a supervisor's mere knowledge of a subordinate's action is enough to make it an unconstitutional behavior. You have to deal with the Iqbal case. Many of the cases your colleague was talking about predated Iqbal. If we look at Iqbal's statement, how is it clearly established that Mr. Farabella, who, according to the allegation, had knowledge of the subordinate's actions, would be liable for his inaction? Your Honor, there are some cases that I believe I cited in the supplemental brief which would have put Chief Farabella on notice that, as a supervisor, he might be, at some point, responsible or liable for the actions of his subordinates. Which one of those cases is a Fourth Amendment case? Also, when you state that, I think you're misstating it. The issue is not whether he's liable for the actions of his subordinates. It seems to me the issue is whether or not he's liable for his own action, i.e. acquiescence or inaction. It's pretty clear, I think, Iqbal, that he can't be liable for his action of a subordinate. There's no respondent superior liability. But what we're focusing on here is not respondent superiority, but his own liability for his own conduct, i.e. acquiescence or non-conduct, which may have, vis-a-vis our case in Rafferty, may have morphed into conduct or some affirmative action by establishing the custom. So if you can kind of put the mouth forward, if you can kind of rephrase what you're about to say with that in mind, I think I find it helpful. Well, the interesting thing, Your Honor, about Iqbal was that it was not a Fourth Amendment case at all. So we're, I think, generalizing about whether the Fourth Amendment or the Eighth Amendment applies. And I hope this goes to Your Honor's point, and that is that in the Mensinger case, which I believe was from 2002, there's a passage in there that says, and I'm paraphrasing, it doesn't necessarily make a difference whether the law enforcement officer is an Eighth Amendment officer or a Fourth Amendment officer. They all have police power. They all can and do use force in the course of their duty. Respectfully, I'm not as, I'm not so sure that the actual amendment matters, even though I understand that Iqbal may have said that. But that's the actual substance. We're talking about a clearly established right. And post-Iqbal in Santiago, we expressly stated we have uncertainty as to the viability and scope of supervisory liability, specifically in the Fourth Amendment context. We said that again in Argueta in 2011, and again in Barks in 2014, we said we're specifically not deciding that. So if the Third Circuit doesn't know if it applies, how would Farabella know if it applies? Well, I would respectfully submit, Your Honor, that Chief Farabella most likely was not reading cases or law reviews as we've seen in this briefing. But I would commend to Your Honor a brief, a case that I've cited in my supplemental brief, a case such as Stroud, which is from 1994. That was a 1980, a Section 1983 case against a state trooper. But that predated Iqbal. That's, I think, what Judge Chung and I are asking about is this, the landscape of the law post-Iqbal. And my colleague just recited our court's own recitations about the lack of clarity. So to kind of repeat, if the circuit's not clear, how can we expect a reasonable officer to know what the law is? I think the circuit, and as applied by the district courts in the circuit, have been a little bit more clear than we give them credit for, Your Honor. I think what I've seen in terms of the case law from the district courts as they I don't know if the right word is ignoring Iqbal, but sort of charting the circuit's own course in choosing what to follow, maybe what not to follow. And I think the Chief Judge, and now the Chief Judge at the district court below, stated a fairly simple standard that I think the district courts consistently have applied. And I think we heard about a little bit when Mr. Barker was arguing. And I think the standard is clear with all respect. It says, as Judge Blum enunciated in her reconsideration opinion below, first, liability may attach if they, meaning the supervisor, with deliberate indifference to the consequences established and maintained a policy, practice, or custom which directly caused the constitutional harm. Second, a supervisor may be personally liable if he or she participated in violating plaintiff's rights, directed others to violate them, or as the person in charge had knowledge of and acquiesced in the subordinates. But I think the issue there is Iqbal, whether or not you agree with it, whether or not I agree with it. The Supreme Court has said that liability turns on the intent of the constitutional violation. Now you just said deliberate indifference. That's a lower standard than the intentional use of force. That's a Barks sample. Those are all Eighth Amendment deliberate indifference cases. And by the way, in the Eighth Amendment, excessive force, you still have to intentionally use force. It's just there's a subjective assessment at the second type of intent. So, I mean, I don't know that deliberate indifference is applicable to the Fourth Amendment context, especially in light of the fact that intent is driven by the intent of the underlying constitutional violation. So the deliberate indifference, the acquiescence, it seems like acquiescence gets closer to that. And that's where I'd really like to hear what your theory of is when does acquiescence or inaction reflect an intent to use force or an authorization of an intent to use force or approval? I think I can address that latter part of your Honor's statement first. As alleged in the Second Amended Complaint, there was a policy within the Millville Police Department for mobile video recording reviews, what we call MVR. And there was a policy in place which gave the supervisor the option of looking at use of force incidents. And this is why the district court record matters a little bit, which is why I suggest that the record here could be supplemented or your Honors could look at the public record, the public docket to see. But we're here on a motion to dismiss, so I'm going to ask you to limit your responses based upon the allegations in the complaint. Because that's what the appeal is but that's not what I'm viewing that order. I understand that, your Honor. I'm just looking at authority that suggests that the court, even on a motion to dismiss, can look at matters of public record. But directly to address it, with respect to that MVR policy that I was just talking about, that was in place beforehand, but Chief Farabella obviously continued it. And that gave, by not looking at use of force as a method of training and supervision of officers within the Millville Police Department, by not looking and studiously avoiding looking at use of force, it gives that implicit authorization to the officers under Chief Farabella's command. So the studiously ignoring is the application of that policy. So is your argument that the force, the policy on its face was constitutionally adequate, but there was a de facto actual application that was unconstitutional? Or are you saying that on its face, it was unconstitutional? I think the policy that we refer to in the second amended complaint was on its face. And interestingly, when Chief Farabella came into place, he actually diluted the policy even further. So that suggests personal involvement, if that's what we're actually talking about. So going back to qualified immunity, are you saying that it was clearly established that the Constitution required that the MVR be reviewed for every use of force? That's a clearly established constitutional? I don't think I'm saying that, Your Honor. Okay. That's what, when you're saying that it's on its face unconstitutional, I mean, maybe it is on its face unconstitutional, but the question for qualified immunity is, was that clearly established? If we're getting really specific about how you define a constitutional, a clearly established constitutional right, I would suggest, Your Honor, that precedent, Third Circuit precedent, suggests that we can look at the clearly established right a little bit more broadly than something that narrow. So I don't know that that is... So express for us what is the clearly established right? I'm sorry, Your Honor? Which cases? You said Third Circuit precedent. Be more specific. Which cases? It's cited in my supplemental brief, Your Honor, and it is in Burns v. County of Cambria, 971 F. 2nd, 1015, the Third Circuit adopted a broad view of what constitutes an established right of which a reasonable person would have known. Burns v. County of Cambria, 971, again, 1015, specifically 1024, that's the Third Circuit 1992 case. That's what I was referring to, Your Honor. And there's been a lot of talk during the briefing back and forth about how you define the right, and I think I tried to provide that in my latest supplemental brief. I don't know that the appellant addressed that issue at all. As I understand, your definition is there's a right under the Fourth Amendment for an individual not to be subjected to excessive force. And as I understand your argument, supervisory liability is a theory of liability, not an independent existing... I think that's... That's your argument, correct? I think that's what one of the courts have actually said. I think it was a district court opinion from, I believe, the Western District of Washington. I don't think it was a published case, but I have seen that elsewhere, that it's a theory of liability. Your Honor, we're really talking beyond weak. Not only is it an unpublished case, but it's an unpublished case from the District of Washington. Let's find out what the minimum court judge has to say about this. That really is a weak authority. Well, it's not authority. It's a weak argument. Could you try again here to just say what is the clearly established right that you're asserting? The clearly established right, Your Honor, is, as I've mentioned, as I hopefully expressed in my supplemental brief, that an unarmed individual who is not suspected of a serious crime, including one who is verbally uncooperative or passively resists police, has the right not to be subjected to physical force, such as being grabbed, dragged, or taken down. Now, the allegations in the second amended complaint, and certainly in the video that is public in the Capps case, suggests that there was something more than just as I've expressed it. But I've tried to express it as simple as possible. Express it, though, as applied to Farabella. As applied to Farabella. That's really where all the play is in this case, as applied to Farabella. So what would be clearly established for Farabella? I think it would be clearly established, and certainly in the cases that I cited in the supplemental brief that Your Honor has requested. Vis-a-vis his own actions or inaction. That a supervisor has to know that and suspect that his officers occasionally are going to your officers to just use excessive force. I think it's a more general right than the specific right that I just kind of specified in a Fourth Amendment context. I'm going to try to rephrase a little bit to see whether or not this is the right you're trying to express. Because remember, the right belongs to the Capps and Joyce. So in the way you've expressed it, an individual has a right to be, an unarmed individual has a right to be free from excessive force. Applying it to the context of a supervisor like Mr. Farabella, does an individual have a right to be free from excessive force by a subordinate officer, supervised by a supervisor, who has notice of that person's pattern of unconstitutional conduct, even if not directly involved in the I think she does. The plaintiffs in this case do have that right. If that is the right, where is it clearly established in our precedent after Twombly? Judge, I don't know. Sorry, after Iqbal. I don't know that after Iqbal it is clearly stated in Third Circuit precedent. I don't know that. However, I would say... Where is it clearly stated anywhere? Where is it clearly stated that it's sufficient to get you past the bar of qualified immunity? Number one. Number two, you started off by saying, let's keep it simple. When you put a term like excessive force in, that's just a descriptor of the force. But what's excessive is what's unreasonable. So why not talk in terms of free from the unreasonable application of force, or the use of an unreasonable amount of force? I think it goes to the... I forget where I read it, Your Honor, but I seem to recall a case that says qualified immunity protects only those who knowingly violate the law or are plainly incompetent. And I remember some other case, I forget which one it is, that says there are certain clear cases of excessive force. And if you look at the video, particularly in the Capps case, you can look in a qualified immunity context and say, this was clearly excessive. Well, that's my point. What makes it excessive? What makes it excessive in this case, Your Honor, was someone who was passively resisting, who was admittedly mouthy with the officer, did not want to be arrested, but she's grabbed around the head, thrown over the officer's hip, and the officer lands on her. He's about 200 plus pounds, six foot something, and she's 100 pounds or less, and falls on her and causes all kinds of rib damage, a bunch of surgeries, and a host of other injuries. It's a matter of, I think, the eye test in some respects, Your Honor. You've already said he was not viewing it. I'm sorry, Judge. No, no, go ahead. Who's asking what question now? Judge McKee's going to go. You can pay attention to him for a minute. I don't understand what excessive means unless you talk in terms of reasonable, because that's the Fourth Amendment standard. You're free from unreasonable use of force. The Fourth Amendment doesn't talk about excessive force. With excessive force from situation to situation, you posited this situation where you could certainly argue it was excessive because it's unreasonable. If it was reasonable to do all of that in this situation, it wouldn't be excessive. Let's assume she came at him with a pair of nunchucks, and he had to engage in this technique, whatever he did, because he's being attacked by a deadly weapon, and apparently someone knew how to use it. In that situation, what he did may not be excessive because it may be reasonable. I agree with Your Honor. In that particular scenario, if my client, Audra Capps, had come after Officer Dixon with a set of nunchucks, he would have reacted differently and the force may have been more reasonable. That's not this case at all. Not even close. Judge Tone. All right. Counsel, thank you for your arguments. Thank you, Your Honor. Okay. You can proceed. On the date of the event, whether it's Capps or Joyce, Chief Farabella knew that he wasn't there. He knew he didn't engage in the force that was used. He didn't encourage the force that was used. He didn't observe anything at the time that he could even know what had happened. So, where is the clearly established law for a person like that to realize that they had a clearly established duty to Capps and Joyce to say something, do something, intervene, make charges? Where does his personal culpability come into play? And if it does, if it does, by some interpretation of case law, then was it clearly established on that date at that time, which is all in February and March of 2018? You focus on only some of the clauses of how a supervisor can be held liable. You direct participation, but you don't really acknowledge the knowledge and acquiescence component. Of that same sort of laundry list of ways of personal liability. I try to because I premise it on he has to observe it to have knowledge of it and acquiesce to it. So, from your point of view, our case law in CH and AM, and the cases are referred to by those initials, in which the court said knowledge of a pattern of unconstitutional conduct and inaction, which could demonstrate approval or authorization for that action, is bad law, even though that's our current law. For personal liability. For individual liability, that's it. So you're saying those cases are wrong. That's wrong. Even though we're bound, what do we do with them? Let's assume you are right that they're wrong, but we are bound by them. What do we do with that set of case law that tells us about knowledge of a pattern, even if not knowledge of the actual event, is sufficient to hold someone liable? I think Judge Bum made the same mistake. I think Judge Bum looked at what do we need to show liability in the official role? And one of those criteria was knowledge of a prior pattern or practice or custom, right? And then she got to looking at the second part. This is on page 43 in the appendix. And in the second part where she does personal liability, she takes the standard for measuring official misconduct and the conduct about you didn't react to what was known about prior practice, custom, and so on. And she imposed it on Farabella in doing her analysis of whether he had personal responsibility. You're saying the district court's error was that Her Honor applied the Monell test to individual liability. Right. Page 43 of the appendix. Judge McKay, anything further? Thank you. Thank you both for your very helpful arguments and your briefing. The court will take them out. Yes, we'll ask that a transcript of this argument be prepared and we'll ask each side to share the expense of that. We appreciate it. We appreciate all of you. Thank you very much. Thank you. We have another case. We're going right into it. That's okay. Unless people need a break. You're good? Okay. Judge McKay, you good to go to the next case? Well, I'm good. That's actually an objective term. Well, I think you're good. I think you're great. I'm okay. All right, okay. So we'll just give counsel a chance to get ready.